IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

David Winters,                          )    C/A 9:10-2700-JFA-BM
                                        )
                 Plaintiff,             )
                                        )
          v.                            )    **REPORT AND RECOMMENDATION**
                                        )
United States,                          )
                                        )
                 Defendant.             )
_____)

This action has been filed by the Plaintiff, pro se, pursuant to the Federal Tort Claims

Act (FTCA), 28 U.S.C. § 1346, et seq. While Plaintiff styles his suit as being pursuant to the FTCA,

he also discusses an Eighth Amendment violation in the body of his Complaint, which would be

assertable under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403

U.S. 388 (1971).[1]  Plaintiff is an inmate with the Federal Bureau of Prisons (BOP), housed at the

Federal Correctional Institution in Estill, South Carolina (FCI Estill).

The Defendant filed a motion for summary judgment pursuant to Rule 56,

---

[1]In Bivens, the Supreme Court established a direct cause of action under the Constitution of
the United States against federal officials for the violation of federal constitutional rights. A Bivens
claim is analogous to a claim under 42 U.S.C. § 1983. However, federal officials cannot be sued
under 42 U.S.C. § 1983 because they do not act under color of state law.  See Harlow v. Fitzgerald,
457 U.S. 800, 814-820 (1982).  Harlow and progeny indicate that case law involving § 1983 claims
is applicable in Bivens actions and vice versa.  Farmer v. Brennan, 511 U.S. 825 (1994).  See also
Mitchell v. Forsyth, 472 U.S. 511, 530 (1985); Turner v. Dammon, 848 F.2d 440, 443-444 (4th Cir.
1988); Osabutey v. Welch, 857 F.2d 220, 221-223 (4th Cir. 1988); and Tarantino v. Baker, 825 F.2d
772, 773-775 (4th Cir. 1987), cert. denied, North Carolina v. Tarantino, 489 U.S. 1010 (1989).



Fed.R.Civ.P., on May 25, 2011. As the Plaintiff is proceeding pro se, a Roseboro order was entered advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendant's motion may be granted, thereby ending his case. Plaintiff thereafter filed a response in opposition to the Defendant's motion on June 27, 2011.

Defendant's motion is now before the Court for disposition.[2]

### Background and Evidence

Plaintiff alleges in his verified complaint[3] that the Defendant, through its agents and employees, has been grossly negligent and acted willfully and wrongfully by denying him medical care and treatment, issuing fraudulent diagnoses, and showing callous indifference towards Plaintiff's serious medical needs, to include liver disease, daily chronic joint pain, and prostate maladies. Plaintiff further alleges that the Defendant continues to deny him medical treatment for his serious illnesses. Plaintiff identifies Dr. Derick Phillip, Clinical Director at FCI Estill, and health care provider Tamala Middleton, as providing medical services at FCI Estill, but provides very few factual details concerning any care they provided. Plaintiff further alleges that employees of the

---

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendant has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[3]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, while Plaintiff has generally set forth his claims in a rambling and conclusory format, the undersigned has considered what factual allegations are set forth in the verified Complaint in issuing a recommendation in this case.



BOP's General Counsel's Office, to include the Regional Counsel and Supervisory Attorney at FCI Edgefield, are all responsible for his improper care because they "could have remedied this tort action . . . but did not". Plaintiff further alleges that FCI Estill uses contaminated water, which Plaintiff alleges contains Benzene. Plaintiff alleges that, as a result, he is being subjected to "toxic poisoning" which causes skin rashes, stomach pains, visual difficulties, and personality changes. Plaintiff alleges that the prison water supply displayed "dark copper water" on August 4, August 22-23, August 26 and September 11-13 (no year provided, but apparently 2010). Plaintiff alleges that these actions also constitute cruel and unusual punishment in violation of the Eighth Amendment.

Plaintiff alleges that his chronic liver disease and prostatitis condition, if left untreated, will "surely cause irreparable harm, and death", and that joint disease, visual and skin disease, which he has incurred due to having to drink unsafe drinking water, will also cause irreparable harm if left untreated. Plaintiff also alleges that medical officials at FCI Estill unlawfully use the inmate co-pay system to charge prisoners Two ($2.00) Dollars for every sick call request, only to then provide little or no service at all, or telling the inmate to go purchase medication from the prison commissary store. Plaintiff further alleges that if an inmate has no funds, his sick call request will never be answered. Plaintiff alleges that he knows this due to "empirical knowledge and observation". Plaintiff also alleges that the medical and non-medical staff at the prison are unqualified and untrained, and also apparently seeks compensation as a whistle blower under the False Claims Act.

Finally, Plaintiff alleges that he has been retaliated against due to having made these claims, and as a result is being denied medical treatment, access to the law library, denied access to the grievance system, and has been "illegally" placed in a three man cell. Plaintiff also alleges that



he has been falsely accused of a disciplinary violation. Plaintiff alleges that his cell was searched by a Lieutenant "Solvick" on September 13, 2010 and that some of his personal items were taken from him; and that he turned in a sick call to medical staff on August 10, containing complaints about chronic joint pain, but that the matter was never resolved, with Health Care Provider Middleton only prescribing a medicine on August 16 that was "too toxic, with stroke, heart attack warnings". Plaintiff alleges that because of the potential danger from the use of this medication, he returned it to Middleton and had "not heard or seen Middleton since . . . ." Plaintiff alleges that on August 28, 2010, he pushed the "panic button" in his cell, but that Physician "Omer" did not respond until several hours later. Plaintiff also alleges that Omer said that she would send Plaintiff some "Gaviscon" tablets, but never did. See generally, Verified Complaint.

Plaintiff has attached to his Complaint an affidavit in which he attests as to the veracity of his claims, a copy of a publication bearing the notation "§ 541.12", at p. 680, and titled "Inmate Rights and Responsibilities"; a copy of a Reconsideration Decision in his tort claim dated June 21, 2010; a copy of an Inmate Request to Staff form dated September 1, 2010 concerning the providing of his medical records to the BOP Southeast Regional Office; a copy of a receipt of Plaintiff's Request for Reconsideration of the denial of his administrative tort claim dated January 29, 2010; a copy of what is apparently an excerpt from a newspaper article or publication dealing with Benzene contamination involving a company in Glenwood Springs, Colorado. See Plaintiff's Exhibit 2.

The Defendant has submitted numerous exhibits in support of summary judgment in this case. Included in the Defendant's exhibits is an affidavit from Tami Cassaro, who attests that she is the supervisory attorney for the Consolidated Legal Center located at FCI Edgefield. Cassaro

4



attests that among her official duties is the responsibility of researching logs and records maintained by the BOP concerning administrative remedies and administrative tort claims. Cassaro attests that Plaintiff filed an administrative tort claim with the Southeast Regional Counsel on or about June 26, 2009, in which Plaintiff claimed that housing three inmates to a cell is illegal. Plaintiff argued that he should not have been placed in the special housing unit (SHU) after he refused to be housed in a three man cell. Plaintiff also asserted in this tort claim that from May 18, 2009 to June 22, 2009, while he was in the SHU, medical staff refused to treat his painful, chronic illnesses; the mail room refused to collect special and legal mail; and his unit counselor refused to process his grievances in a timely manner. Plaintiff further alleged that SHU staff denied him access to the SHU law library because of his physical disability, denied him access to nail clippers, and subjected him to abuses of administrative processes and procedural due process. Cassaro attests that Plaintiff was mailed a denial letter on October 30, 2009, which stated, <u>inter alia</u>, that Plaintiff chose to go to the SHU on May 8, 2009, despite the fact that he had been in a three man cell for a month, and advising Plaintiff that he would be moved to a two man cell when space became available. Cassaro attests that Plaintiff was released from the SHU on May 26, 2009, but again refused to be housed in the three man cells, so he was placed back in the SHU. Subsequently, on June 30, 2009, Plaintiff was released from the SHU and again given a three man cell assignment, which this time he accepted. Cassaro attests that Plaintiff was subsequently assigned to a two man cell on July 10, 2009, when space became available.

Cassaro attests that the denial letter also explained to Plaintiff the process of retrieving legal and special mail, and noted that the prison's medical records did not indicate that



Plaintiff had sought medical treatment during either period of time he was in the SHU.[4]  See also, generally, Defendant's Exhibit 9.  There was also no record that Plaintiff had sought the services of the psychology department regarding any mental, emotional, or psychological injuries he allegedly suffered as a result of staff action.  Cassaro attests that Plaintiff was advised that if he was dissatisfied with the decision, he could file suit in the appropriate United States District Court within six months of the date of the letter.  Cassaro attests that on January 22, 2010, Plaintiff requested in writing a reconsideration of the denial of his tort claim, but that after a reinvestigation of the claim, Plaintiff's reconsideration request was denied on June 21, 2010.  See also Defendant's Exhibits 6-7.

Cassaro also attests that Plaintiff's administrative tort claim did not raise any issue regarding Plaintiff being given a fraudulent medical diagnosis relating to his liver, chronic joint pain, or prostate maladies; and did not contain any allegations of violations of his Fourth Amendment and privacy rights; the issue of contaminated water; or lack of qualified, trained staff.  Rather, Plaintiff's administrative tort claim only made allegations that medical staff denied him medical care from May 18, 2009 to June 22, 2009 while he was in the SHU.  With respect to any possible Bivens claim, Cassaro attests that Plaintiff submitted at least five requests for administrative remedies during the time he was in the SHU from May 18, 2009 to June 30, 2009, only one of which was appealed to the Southeast Regional Director.  See generally, Cassaro Affidavit.

In addition to this affidavit, the Defendant has attached a copy of Plaintiff's Sentence Monitoring Computation Data (Defendant's Exhibit 1), Housing History (Defendant's Exhibit 2),

---

[4]Cassaro attests that medical staff did examine Plaintiff when he claimed he needed to be handcuffed in front rather than behind, but that no medical reason was found to require cuffing Plaintiff in the front.



Administrative Tort Claim Documents, TRT-SER-2009-0416 (Defendant's Exhibits 4-7; a copy of the response to Plaintiff's Request for Administrative Remedy, No. 541462-F3 (Defendant's Exhibit 8); a copy of Plaintiff's medical records (Defendant's Exhibit 9); a copy of an Administrative Detention Order dated May 18, 2009 (Defendant's Exhibit 10); a copy of an Incident Report dated May 18, 2009 (Defendant's Exhibit 11); a copy of the response to Plaintiff's Request for Administrative Remedy, No. 547644-F1 (Defendant's Exhibit 12); a copy of an Incident Report dated May 26, 2009 (Defendant's Exhibit 13); a copy of an Administrative Detention Order dated May 26, 2009 (Defendant's Exhibit 14); a copy of FCI Estill's Special Housing Rules (Defendant's Exhibit 15); a copy of the tort claim investigation findings for Plaintiff's Administrative Tort Claim (Defendant's Exhibit 16); and an abstract of Plaintiff's administrative remedy history (Defendant's Exhibit 17).

As attachments to his response to the Defendant's motion, Plaintiff has submitted a copy of a statement given by the Director of the Federal Bureau of Prisons to a Congressional Committee concerning federal prisoner reentry and the Second Chance Act (Plaintiff's Exhibit A); a copy of an Incident Report dated May 26, 2009 (Plaintiff's Exhibit B, and attachments 2 and 3); a copy of the response to Plaintiff's Request for Administrative Remedy, No. 541462-F3 (Plaintiff's Exhibit B-3 and 4); a copy of a picture of a gas station apparently taken from a newspaper (Plaintiff's Exhibit C); and what appears to be part of an article from a newspaper concerning underground storage tanks (Plaintiff's Exhibit D).

## Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

7



genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

## I.

### (Federal Tort Claim)

The FTCA waives sovereign immunity and allows suits against the United States for personal injuries caused by government employees acting within the scope of their employment. Under this Act, a plaintiff may recover monetary awards from the United States for damages "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope...of employment." 28 U.S.C. § 1346(b). However, in order to obtain relief in federal court under the FTCA, a litigant must first have exhausted their administrative remedies. See 28 U.S.C. § 2675; McNeil v. United States, 508 U.S. 106, 113 (1993) ["The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."].

While the United States does not contest administrative exhaustion of some of



8

Plaintiff's claims, Defendant points out that nowhere in Plaintiff's administrative claim did Plaintiff raise the issue that he was given a fraudulent medical diagnosis as it relates to his liver, chronic joint pain, and prostate maladies; allegations of violations of his Fourth Amendment and privacy rights; the issue of contaminated water; or lack of qualified, training and ethics staff at FCI Estill. Rather, the only allegations made in Plaintiff's administrative tort claim relate to medical care that medical staff allegedly denied him from May 18, 2009 to June 22 2009 while he was in the SHU, and that he was improperly placed in a three man cell, was denied proper access to the law library, and that his grievances were not properly processed. The evidence presented to this Court supports Defendant's assertions. See Defendant's Exhibits 3, 4 and 6. Therefore, any tort claims Plaintiff has asserted relating to those issues that have not been exhausted should be dismissed, and have not been considered by the undersigned in the issuing of this opinion. Henderson v. United States, 785 F.2d 121, 123 (4th Cir. 1986)[Exhaustion requirement is jurisdictional]; Plyler v. United States, 900 F.2d 41, 42 (4th Cir. 1990)[FTCA exhaustion is jurisdictional and may not be waived].

   With respect to Plaintiff's exhausted tort claims, whether any government employee was negligent is to be determined "in accordance with the law of the place where the act or omission occurred," in this case the State of South Carolina. 28 U.S.C. § 1346(b). In order to prove negligence in South Carolina, Plaintiff must prove by a preponderance of the evidence that 1) the Defendant had a legal duty of care; 2) the Defendant failed to discharge that duty; and 3) the Defendant's breach proximately caused him injury. Ajaj v. United States, 479 F.Supp.2d 501, 549 (D.S.C. 2007); Goode v. St. Stephens United Methodist Church, 494 S.E.2d 827, 834 (S.C. 1997); Hubbard v. Taylor, 529 S.E.2d 549 (S.C.App. 2000). Plaintiff may show an affirmative legal duty of care to him arising from a statute if the plaintiff is a member of the class of persons the statute is



9

intended to protect, and the essential purpose of the statute is to protect the plaintiff from the kind of harm he suffered. Rayfield v. South Carolina Dep't of Corrections, 374 S.E.2d 910, 914 (S.C.Ct.App. 1988). Here, an affirmative legal duty of care towards the Plaintiff does exist by virtue of 18 U.S.C. § 4042, which provides that the Bureau of Prisons "shall...provide suitable quarters and provide for the safekeeping, care and subsistence of all persons charged with or convicted of offenses against the United States." However, after careful review of the evidence in this case, discussed herein supra, and consideration pursuant to the standards required to succeed on a tort claim in this Court, the undersigned does not find that Plaintiff has set forth evidence of a breach of that duty sufficient to survive the Defendant's motion for summary judgment.

While the Defendant's legal duty of care can reach the level of a constitutional claim insofar as appropriate care for prisoners is mandated by the Eighth Amendment, for purposes of an FTCA claim this duty is only one of "reasonable care" as provided by § 4042. See Johnson v. U. S. Government, 258 F.Supp. 372, 376 (E.D.Va. 1966)[Under Section 4042, a prison official's duty requires only the exercise of ordinary diligence under the circumstance]; see also In re Agent Orange Product Liability Litigation, 635 F.2d 987, 996 (2d Cir. 1980) [dissenting] (citing Owens v. Haas, 601 F.2d 1242 (2d Cir. 1979), cert. denied, 444 U.S. 980 (1979)); Harley v. United States, No. 08-820, 2009 WL 187588 at * 4 (D.S.C. Jan. 26, 2009). Further, Plaintiff is required to show negligence with reasonable certainty, not through mere conjecture, and he may not attempt to prove negligence through the doctrine of res ipsa loquitur. Ajaj, 479 F.Supp.2d at 549; Eickhof v. Beard-Laney, 20 S.E. 2d 153, 154-155 (S.C. 1942); Crider v. Infinger Transportation Co., 148 S.E.2d 732, 735 (S.C.1966). Plaintiff has provided no evidence to support the extremely general and conclusory claims in his Complaint that prison officials did not provide him "reasonable care". To the contrary,

10



Plaintiff's medical records (Defendant's Exhibit 9) clearly reflect that Plaintiff received treatment from medical personnel both before and after his time spent in the SHU.  Additionally, as noted by the Defendant in its memorandum, there is no evidence that Plaintiff made any medical complaints or requested medical care while in the SHU from May 18, 2009 to June 30, 2009.  See Defendant's Exhibits 5 and 9.

By contrast, none of the evidence or exhibits submitted by the Plaintiff constitutes evidence that the medical care Plaintiff received during the relevant time period was in any way improper.  Specifically, Plaintiff has presented no evidence such as affidavits from other medical professionals, copies of requests for medical care or records of care received, or any other type of medical evidence, to support his claim of improper or inadequate medical care.[5]  Luckett v. United States, No. 08-13775, 2009 WL 1856417 at * 5 (E.D.Mich. June 29, 2009) (citing Lambert v. United States, 198 Fed.Appx. 835, 839 (11th Cir. 2006)[affirming dismissal of medical malpractice claim under FTCA where Plaintiff submitted only "his own conclusory allegations."]; cf. Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]; cf. Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence, and contrary to the medical evidence on record, insufficient to defeat summary judgment

---

[5]On page 12 of Plaintiff's Complaint, he discusses various problems he had with health care providers in August 2010.  Obviously, these dates are well past the time period covered by Plaintiff's administrative tort claim.  Therefore, even if the Court were to find these verified factual allegations established a genuine issue of fact as to whether Plaintiff received negligent medical care at that time (a finding which the undersigned does not make), these claims are not exhausted for purposes of consideration in this lawsuit.



on Eighth Amendment deliberate indifference claim]. Therefore, Plaintiff's medical claim is without merit.

With respect to the remainder of Plaintiff's exhausted claims (placement in a three man cell, lack of access to the law library, and failure to process grievances in a timely manner), Plaintiff appears to allege that he was subjected to these conditions out of retaliation for pursuing prison remedies for his complaints. However, none of the exhibits provided to the Court, either by the Defendant or by the Plaintiff, constitutes evidence to support Plaintiff's claim that he was treated more harshly than other inmates or that he was retaliated against for having engaged in some type of protected activity. Cf. Atkinson v. Bohn, 91 F.3d 1127, 1129 (8th Cir. 1996) (per curiam) [speculative and conclusory allegations cannot support retaliation claim]; Wright v. Vitall, No. 91-7539, 1991 WL 127597 at **1 (4th Cir. July 16, 1991) [Retaliation claim based on mere conclusory statements cannot withstand defendants' summary judgment motion]; LaCroix v. Williams, No. 97-0790, 2000 WL 1375737 at *4 (W.D.N.Y. Sept. 21, 2000) ["Plaintiff's conclusory allegations aside, there is simply nothing in the record to support his version of the facts and plaintiff's claim for retaliation fails"]; see also Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995)[case dismissed where Plaintiff produced nothing beyond his own conclusory allegations suggesting that prison official's actions were motivated by a retaliatory animus]. Hence, Plaintiff's general and conclusory claim that he was treated unfairly out of some type of retaliatory animus, without any supporting evidence, is simply not sufficient to survive the Defendant's motion for summary judgment. Cf. Harris, 65 F.3d at 912 [case dismissed where Plaintiff produced nothing beyond his own conclusory allegations suggesting that prison official's actions were motivated by a retaliatory animus]; Woods v. Edwards, 51 F.3d 577, 580-581 (5th Cir. 1995) [summary judgment affirmed where inmate offered no



evidence other than his personal belief that the alleged retaliatory actions were based on his exercise of his rights]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["[E]ven though pro se litigants are held to less stringent pleading standards then attorneys, the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"].

In any event, Plaintiff has failed to show that the BOP breached its duty of care to provide him with suitable quarters, as it is not uncommon for prison inmates to be housed three to a cell in federal prisons when circumstances warrant. See Hubbard v. Taylor, 538 F.3d 229 (3rd Cir. 2008)[Recognizing that the interest in management of an overcrowded prison may result in triple--celling]; Tapp v. Proto, 718 F.Supp. 2d 598, 618 (E.D.Pa. 2010)[Triple bunking of detainee for less than six weeks because there was not a double cell available was incident to a legitimate government purpose]; see also Cassaro Afffidavit, #3 [outlining the reasons for Plaintiff to be temporarily house in a three person cell until space in a two person cell became available on July 10, 2009]. Plaintiff has also provided no evidence to show that he experienced any harm as a result of assignment to a three person cell, nor is there any evidence to show that Plaintiff was treated any differently than other inmates with respect to the waiting time for assignment to a two man cell. As for Plaintiff's law library complaint, Defendant's Exhibit 16 (Findings of Investigation) states that Plaintiff never submitted a request to use the law library while he was in the SHU, and, other than his own self serving, general and conclusory allegations as set forth in his Complaint, Plaintiff has presented no evidence to refute this finding, or to otherwise show that he was ever denied access to a law library consistent with the rules and regulations applied to every other inmate. There is certainly no evidence to show that any prison official was negligent in this regard, or breached any duty of reasonable care. Johnson, 258 F. Supp. at 376 [Under § 4042, a prison official's duty requires only the exercise of

13



ordinary diligence under the circumstances]. Finally, with respect to Plaintiff's grievance claim, Plaintiff has himself submitted copies of administrative remedies he filed, while the Defendant's evidence reflects that Plaintiff submitted five administrative remedy requests during the time he was in the SHU from May 18, 2009 to June 30, 2009. See Defendant's Exhibits 3, 17. Defendant's exhibit 16 also reflects that, during the time period Plaintiff was in the SHU, he asked for and received several administrative remedy forms.

In sum, Plaintiff has provided no evidence to show that any prison official committed any negligent act which proximately cause any injury to the Plaintiff, or failed to exercise ordinary diligence under the circumstances. Ajaj, 479 F.Supp.2d at 549; Johnson, 258 F.Supp. at 376. Therefore, the Defendant is entitled to dismissal of the Plaintiff's FTCA claim. Eickhof, 205 S.E.2d at 156 [a plaintiff is required to show negligence with reasonable certainty, and not through mere conjecture]; see Papasan v. Allain, 478 U.S. 265, 286 (1986) [courts need not assume the truth of legal conclusions couched as factual allegations]; House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [plaintiff's conclusory allegations insufficient to maintain claim].

## II.

### (Bivens Claim)

Bivens established a direct cause of action under the Constitution of the United States against federal officials for the violation of federal constitutional rights. Bivens, 403 U.S. at 397; see Farmer v. Brennan, supra; Bolin v. Story, 225 F.3d 1234, 1241-1242 (11th Cir. 2000); Campbell v. Civil Air Patrol, 131 F.Supp 2d 1303, 1310, no date (M.D.Ala. 2001); see also, note 1, supra. However, it is unclear whether Plaintiff has also intended to assert a constitutional claim under Bivens in this case, as (although he references the Eighth Amendment in his Complaint) he has



specifically styled his action as one being brought under the FTCA.[6]

In any event, while a federal employee may be subject to suit for damages in their individual capacity in a <u>Bivens</u> lawsuit; <u>F.D.I.C. v. Meyer</u>, 510 U.S. 471, 484 (1994)[<u>Bivens</u> claim can be brought against an individual federal employee in his individual capacity]; neither the United States nor the Federal Bureau of Prisons is subject to suit in a <u>Bivens</u> action. <u>Radin v. United States</u>, 699 F.2d 681, 685 (4th Cir. 1983); <u>Moore v. U.S. Dept. of Agriculture on Behalf of Farmers Home Admin.</u>, 55 F.3d 991, 995 (5th Cir. 1995); <u>FDIC v. Meyer</u>, 510 U.S. at 484-486 (1994). Therefore, as the United States is the only named Defendant in this lawsuit, to the extent Plaintiff has intended to assert a <u>Bivens</u> claim, it is subject to dismissal.

### <u>Conclusion</u>

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment with respect to Plaintiff's claims being asserted under the FTCA be **granted,** and that Plaintiff's FTCA claims be **dismissed**.[7] To the extent Plaintiff has intended to assert a constitutional claim under <u>Bivens</u>, it is recommended that that claim be **dismissed** for failure to name a proper

---

[6]Plaintiff also references the False Claims Act in the body of his Complaint. The False Claims Act allows a private individual to bring an action on behalf of the government against those who defraud the government. 31 U.S.C. § § 3729-33. As a <u>pro se</u> litigant, Plaintiff cannot bring a claim against the government on behalf of the government. <u>U. S. ex rel. Hixson v. Health Management Systems</u>, 657 F.Supp. 2d 1039, 1059 (S.D.Iowa 2009)[finding that in an FCA case, "[i]t is clear that <u>pro se</u>, nonlawyer [Plaintiffs] lack standing to prosecute <u>qui tam</u> actions."]; <u>U.S. ex rel. Rockefeller v. Westinghouse Elec. Co.</u>, 274 F.Supp. 2d 10, 15-17 (D.D.C. 2003)[A relator cannot proceed <u>pro se</u> in a <u>qui tam</u> FCA action.].

[7]Plaintiff's exhausted FTCA claims should be dismissed with prejudice, while his unexhausted claims should be dismissed without prejudice. <u>Faison v. LeBlanc</u>, 250 Fed. Appx. 195, 196 (8th Cir. 2007)[affirming dismissal of unexhausted FTCA claims without prejudice]; <u>Tarafa v. B.O.P. MDC Brooklyn</u>, No. 554, 2007 WL 2120358 at * 3 (E.D.N.Y. July 23, 2007).



party, without prejudice.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

July 14, 2011
Charleston, South Carolina



16

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

